# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

JOHN WALKER,

        Plaintiff,

v.                                       Case No. 09-1316-MLB

THE BOARD OF COUNTY
COMMISSIONERS OF SEDGWICK
COUNTY and COMCARE OF SEDGWICK
COUNTY,

        Defendants.

## MEMORANDUM AND ORDER

This matter is before the court on the following motions:

    1. Plaintiff's Second Motion to Compel (Doc. 63);

    2. Plaintiff's Motion for Sanctions (Doc. 70); and

    3. Defendants' Motion to Quash Subpoenas (Doc. 85).

The rulings are set forth below.

## Background

Plaintiff was employed by defendants as a psychotherapist from April 2005 until his termination in September 2009. Defendant Comcare is a "community mental health center" and provides a safety net for Sedgwick County individuals in need of mental health and

substance abuse services.

Plaintiff contends that defendants allowed a sexually hostile work environment to exist and then retaliated after plaintiff complained. Highly summarized, the claims are based on allegations that Ms. Harris, a female coworker, (1) made inappropriate sexually offensive comments in his presence, (2) engaged in inappropriate touching, (3) telephoned plaintiff over 185 times at home or work and (4) routinely followed him from his office to his car. Plaintiff sought and secured a Protection From Stalking ("PFS") restraining order in Sedgwick County District Court and Ms. Harris apparently violated the restraining order. Plaintiff alleges that defendants refused to honor the PFS order or to otherwise prevent Ms. Harris from contacting him at work and retaliated against him for filing administrative complaints.

### Plaintiff's Second Motion to Compel (Doc. 63)

Plaintiff moves to compel defendants to provide complete and proper responses to his third set of production requests. After supplemental production and discussion between counsel, the issues in dispute are Production Request Nos. 1, 9, 12-13, and 15-20. Plaintiff also requests sanctions based on defendants' failure to produce documents and "continuous pattern of disregard for open disclosure and honesty in the discovery process." Doc. 63, p. 1. Defendants counter that plaintiff's assertion is "wholly without merit" and that plaintiff's counsel failed to confer in good faith prior to filing this motion to compel. As explained in greater detail below, the motion shall be DENIED WITHOUT PREJUDICE.

With respect to the duty to confer, the court agrees the parties did not confer as required by D. Kan. Rule 37.2 before moving to compel. Although the parties exchanged written explanations of their respective positions, the parties did not actually "confer" before the motion to compel was filed. After the motion was filed, the parties conferred and resolved a number of discovery disputes. Notwithstanding the failure to confer as required by D. Kan. Rule 37.2, the court will briefly address the issues which plaintiff contends remain in dispute.

**Production Request No. 1**

Request No. 1 seeks production of any claim of sexual harassment by or against any Comcare employee between 2000 and 2010. Defendants argue that they have produced the documents in their possession. Although plaintiff insists that there must be more documents, defendants' representation that all documents have been produced is the end of the issue. If additional documents responsive to this request are later discovered, defendants will face adverse consequences. However, at this time there is nothing further to address concerning Production Request No. 1.

**Production Request No. 9**

Plaintiff's Request No. 9 seeks Administrative Management Team notes from January 2009 to the present. Defendants apparently have produced some minutes but question the relevance of further production. Unfortunately, plaintiff's motion to compel Production

Request No. 9 is so abbreviated that the court is unable to determine the relevance of the requested information. Under the circumstances, the motion to compel is DENIED WITHOUT PREJUDICE.

**Production Request No. 12**

Request No. 12 seeks evaluations of certain therapists for a five year period. Defendants contend that the evaluations have been produced. However, plaintiff counters that the evaluations for four employees were not included in the records produced and that the "supervisor observations are unreadable." The missing four employee evaluations and "unreadable" nature of documents are issues that should be addressed and resolved during the "meet and confer" process. The request to compel is DENIED WITHOUT PREJUDICE.

**Production Request No. 13**

Request No. 13 seeks electronic productivity reports for certain therapists from 2005-2010. Defendants argue that they have produced the reports that contain this information. Plaintiff counters that defendants produced only redacted excel spreadsheets and that he has no way of independently evaluating the response. Plaintiff also argues that because of defendants' history of production "this should be a red flag that it is altered evidence."

The court is unable to determine from plaintiff's conclusory comments whether or not defendants have "altered evidence." Moreover, the court is unable to determine from the briefing exactly what relief plaintiff seeks. Under the circumstances, the request to compel

Production Request No. 13 is DENIED WITHOUT PREJUDICE.

**Production Request Nos. 15-20**

Plaintiff requested the "complete personnel file" of (1) Judy Addison, a former Comcare supervisor, (2) Marilyn Cook, the Executive Director of Comcare, and (3) four additional employees in Comcare's upper management. Defendant objects to production of the "complete personnel files" because the employees are not "similarly situated" and because the requests are overly broad, oppressive, and irrelevant. The limited briefing by the parties is inadequate to determine whether these employees are "similarly situated." More importantly, as currently formulated, the requests are overbroad and would include such irrelevant information as tax and health information. As currently drafted, the requests are denied. However, plaintiff is granted leave to formulate much narrower requests for information which has direct relevance to this lawsuit.

**IT IS THEREFORE ORDERED** that plaintiff's second motion to compel (**Doc. 63**) is **DENIED WITHOUT PREJUDICE.**

## Plaintiff's Motion for Sanctions (Doc. 70)

On January 24, 2011, this court granted plaintiff's motion to compel production of documents. Memorandum and Order, Doc. 58. Specifically, the court ordered defendants to produce by February 4, 2011 documents related to all suggested disciplinary actions

against Patricia Harris, including (1) patient or coworker complaints and (2) any supervisor notes and documents related to discipline that was initiated or contemplated. The period of time covered by this request extended from 2006 to the present. Defendants were also ordered to provide complete department files and Dr. Rex Lear's supervision notes on Ms. Harris. Plaintiff moves for sanctions, arguing that defendants failed to comply with the court's production order. As explained in greater detail below, plaintiffs' motion shall be GRANTED IN PART.

Based on the press of other legal work, defense counsel informally asked plaintiff's counsel to extend the February 4 production deadline to February 8. Organization and production of the documents was further delayed by defense counsel's illness and a snow storm. When the documents were finally produced in an unorganized manner on February 9, plaintiff discovered deficiencies. For example, plaintiff knew that incident reports concerning Ms. Harris had been filed by a coworker as recently as January 14 and 21, 2011 but those reports were not included in the produced documents.

Plaintiff sent defendants an itemized list of fifteen areas where documents were not produced. Communications between counsel deteriorated as plaintiff pressed for prompt resolution of the deficient production and defense counsel struggled with the press of work, illness, and other family medical issues. Plaintiff filed his motion for sanctions on March 1, 2011 and defendants ultimately produced additional documents on March 22.

In opposition to the motion for sanctions, defendants argue that (1) the motion was premature, (2) plaintiff failed to confer in good faith, and (3) the parties could have resolved

most of the fifteen issues without court intervention. The court cannot agree. Plaintiff's original motion to compel (Doc. 31) revealed a history of tardy discovery responses and objections which culminated in a court order to produce additional documents by February 4, 2011. (Doc. 58). Notwithstanding this history of discovery delays and a court order, defendants' February 9 production was still incomplete. The motion for sanctions was not premature.

Moreover, plaintiff asked defendants to correct these deficiencies in numerous email messages before filing the motion for sanctions. Plaintiff made a good faith effort to confer and resolve the deficiencies in production, pointing out very specific e-mail sources and deposition testimony suggesting missing documents. Defendants' assertion that plaintiff failed to confer in good faith is wholly without merit.

Finally, defendants present no evidence that the deficiencies would have been timely resolved absent a motion for sanctions.[1] The court ordered that production of the additional documents be provided by February 4, 2011. Notwithstanding this order, defendants were still in the process of producing responsive documents on March 22, 2011.

With respect to certain categories of missing documents, defendants argue that they did not willfully withhold the January 14 and January 21, 2011 incident reports concerning Ms. Harris. Specifically, defendants submit the affidavit of Joan Tammany, Comcare's risk

---

[1] Defense counsel asserts the peculiar argument that he "lost all incentive to finish his response to plaintiff's February 16 letter until he began preparing the response to the sanction motion." Doc. 90, p. 5. The court's January 24 Memorandum and Order should have been sufficient "incentive" to produce the documents.

-7-

manager, who states that she did not see the incident reports until sometime after January 25, 2011 and did not realize that they should be produced.

The affidavit raises serious questions concerning the thoroughness of defendants' search for documents responsive to plaintiff's discovery requests.[2] The two incident reports were prepared before the January 25 order and Tammany's affidavit does not explain why the reports were not reviewed by her in a timely manner. Equally important, there is no evidence that defendants asked Ms. Harris's coworkers to search and produce records responsive to this discovery request.[3] As part of the sanctions in this case the court will require defendants to distribute an email request to *all* Comcare employees requesting documents responsive to the court's January 24 Memorandum and Order.

Defendants also argue that they did not produce two subpoenas issued by the Kansas

---

[2] Defendants argued in response to plaintiff's original motion to compel that complaints about Ms. Harris were not in her personnel file and "we don't know where else to look." The court did not find this argument persuasive in granting plaintiff's motion to compel on January 24, 2011.

[3] Plaintiff's counsel independently learned of the two incident reports from the coworker who authored the reports. Attachments submitted by the parties reveal that the coworker produced the documents directly to plaintiff's counsel after reading the court's published January 24 order "on the internet." Defendants did not request that the coworker search for records responsive to the discovery request or court order.

In one more unusual twist in this case, defendants subsequently conducted an internal investigation to determine why the coworker provided the January reports to plaintiff's counsel. Defendants and defense counsel were unaware that the coworker surreptitiously recorded their questions and the employee's responses.

Defense counsel also accused plaintiff's counsel of unethical conduct concerning receipt of the reports. Plaintiff's counsel self-reported the accusation and apparently has been advised by the Disciplinary Office for Kansas attorneys that no ethical violation occurred.

Board of Nursing to defendants concerning Patricia Harris because "defendants were never given a copy of any complaint against Harris filed by the Board of Nursing." This argument is disingenuous. Ms. Harris was indisputably under investigation by her state licensing board and the subpoenas were issued in contemplation of discipline. Defendants' response reflects a superficial search and review for responsive documents. The documents have now been produced.

One of the fifteen areas of missing documents which plaintiff pointed out to defendants involved complaints made by patient EW to Dr. Lear concerning Ms. Harris in December 2010. Defendants explain that they have now identified Dr. Lear's notes related to this patient complaint and produced them on March 22. Defendants argue that "this is an example of an item which could have been resolved between counsel without resorting to this motion for sanctions." This argument is inapposite and does not explain why the notes were not produced on February 4 as ordered by the court.

In addition to the request for sanctions, plaintiff identifies four ongoing disputes. The first two disputes relate to Dr. Lear and Marilyn Cook. Plaintiff contends that neither person has produced all of their notes and records concerning Ms. Harris. Defendants argue that they have produced all records and that a number of the incidents referenced were addressed orally and no records exist for production.

The limited record before the court does not contain sufficient evidence for the court to conclude that Dr. Lear and Marilyn Cook have withheld or otherwise failed to produce documents responsive to plaintiff's discovery requests. However, plaintiff has presented

evidence that defendants have been dilatory in producing documents and that some searches have been superficial. To bring this controversy to a resolution, the court will require Dr. Lear and Ms. Cook to submit signed affidavits to plaintiff's counsel attesting to the fact that they have produced all responsive records. The signed affidavits will resolve plaintiff's concerns regarding the completeness of production.[4]

Plaintiff also argues that defendants have failed to produce all critical incident reports concerning Ms. Harris. Defendants acknowledge that they do not have certain incident reports; therefore, they cannot produce documents which they don't have. For example, defendants are aware that at least one critical incident report was sent to the Kansas Board of Nursing in response to a subpoena; however, Comcare explains that it has been unable to locate the original incident report. Obviously, a party cannot produce documents that it does not have. Although plaintiff is critical of defendants' record-keeping, no evidence has been presented that the document was destroyed after this case was filed. Plaintiff may conduct discovery concerning spoliation but, under the circumstances, an order compelling production would be a futile gesture given defendants' representation that they do not possess the document.

The fourth controversy involves defendants' failure to produce records of two peer review proceedings that involved Ms. Harris. The limited record before the court indicates

---

[4] Obviously, defendants will be confronted with adverse consequences should responsive documents be discovered after the affidavits are provided to plaintiff's counsel.

that the peer review proceeding was "standard operating procedure" for the suicides of two patients of Ms. Harris. Under the circumstances, the court is not persuaded that these peer review proceedings were initiated for the purpose of disciplining Ms. Harris. Defendants' failure to produce these records is not a violation of the court's January 24, 2011 order.

In summary, defendants did not comply with the court's January 24 order of production in a timely manner and sanctions are therefore warranted. Plaintiff's request that a default judgment be entered as a sanction is excessive and not warranted under current circumstances. However, plaintiff has been forced to expend unnecessary resources to secure document production after the January 24, 2011 Memorandum and Order. Because of the delays and unnecessary expenditure of resources, monetary sanctions are warranted. The parties shall confer concerning the reasonable attorney fees associated with plaintiff's motion for sanctions and, if unable to agree, plaintiff shall file an affidavit containing her hourly rate and billable hours associated with the motion. The affidavit shall be filed by **June 10, 2011.** Defendants' response, if any, to the requested attorney fees shall be filed by **June 17, 2011.** The response shall be limited to five pages.

Defendants shall also communicate directly with (1) all employees working for Comcare and (2) all employees in Sedgwick County having <u>any</u> supervision or management responsibilities concerning Ms. Harris. The communication shall request that the employees search their records for any documents responsive to Production Request Nos. 7 and 15, as refined by court rulings. The communication shall be distributed no later than **June 10, 2011** and require a response to defense counsel by **June 17, 2011.** Defense counsel shall produce

any documents to plaintiff on or before **June 24, 2011.**

**IT IS THEREFORE ORDERED** that plaintiff's motion for sanctions **(Doc. 70)** is **GRANTED IN PART**, consistent with the rulings herein.

**Defendants' Motion to Quash Subpoenas (Doc. 85)**

Defendants move for an order: (1) quashing plaintiff's subpoenas to non-parties for business records, (2) imposing monetary sanctions, and (3) precluding use or disclosure of the produced records. Defendants contend that plaintiff failed to provide notice before issuing the subpoenas as required by Fed. R. Civ. P. 45(b)(1). As explained in greater detail below, the motion shall be DENIED.

The genesis of defendants' motion to quash is plaintiff's mailing of notices of intent to issue Rule 45 record subpoenas *to non-parties*.[5] Fed. R. Civ. P. 45 governs the formal procedure for securing the production of records from non-parties and Rule 45(b)(1) provides:

> If the subpoena commands the production of documents, . . . then *before* it is served, a notice must be served on each *party*. (Emphasis added).

The requirement that notice be provided *to the parties before service* of the subpoena allows opposing counsel time to object to the subpoena. Butler v. Biocore Medical Technologies, Inc., 348 F.3d 1163 (10th Cir. 2003); Allender v. Raytheon Aircraft Company, 220 F.R.D.

---

[5] There are, of course, situations where a non-party might voluntarily provide documents to a party without issuance of a subpoena. However, plaintiff clearly sought formal discovery from non-parties under the subpoena provisions of Rule 45.

-12-

661 (D. Kan. 2004). Defendants argue that plaintiff violated Rule 45(b)(1) by serving record subpoenas on non-parties at the same time notices were provided to defense counsel. Plaintiff contends that notices of intent to issue business record subpoenas were served on opposing counsel *before* subpoenas were served on non-parties.

Ordinarily, the issue of timely notice is resolved by a relatively straightforward analysis of two simple factual questions: (1) when was notice provided to counsel for the opposing party and (2) when was the subpoena served on the non-party? The first factual question is easily answered in this case because plaintiff's certificates of service show that notices of intent to issue business record subpoenas were mailed to defense counsel on February 16 and 17, 2011.

The second factual question is complicated by plaintiff's unusual practice of serving the ***non-party record holders*** with both the "notice of intent to issue business record subpoena" and subpoenas signed by plaintiff's counsel on February 16 and 17.[6] Plaintiff's approach resulted in confusion among the non-party recipients with some of them proceeding as if a record subpoena had been served on February 16/17 and others waiting for service of

---

[6] Each non-party received a "notice of intent to issue business record subpoena" stating that the attached subpoena would be served within ten days unless a party objects to production of the documents sought. However, the attached subpoena is signed by counsel and contains a specific date for production and it is easy to understand why a non-party might view the attachment as the actual subpoena. The instructions accompanying the subpoena also stated that the party could mail the requested records to counsel "within fourteen (14) days after receipt of this subpoena" instead of appearing at the time and place listed in the subpoena.

-13-

a subsequent subpoena.[7]  This confusion would have been avoided had plaintiff served the "notice of intent to issue subpoenas" only on the *parties* in the case as contemplated by Rule 45(b)(1).[8]

Notwithstanding the confusion created by plaintiff's February 16 and 17 mailings to non-parties, the court is not persuaded that defendants' requested sanctions and protective order are warranted.  Plaintiff sent notice of his intent to issue business record subpoenas to defendants on February 16 and 17 and advised that subpoenas would be served if no objections were raised within ten days of the *date of the notices.*  Notwithstanding this ten day period to object, defendants waited until March 3, 2011 before sending an e-mail objection.  Defendants' objection to service of the subpoenas was untimely.  This court declines to impose sanctions or a protective order when a party fails to timely assert

---

[7] For example, the Wichita Police Department and the Kansas Behavioral Sciences Regulatory Board provided documents to plaintiff's counsel pursuant to the subpoena attached to plaintiff's "notice of intent."  At least one non-party questioned whether plaintiff's "subpoena" was proper and conferred with plaintiff's counsel.

[8] Rule 45(c)(2) contains a separate mechanism for non-parties to object to producing documents *once they are served with a subpoena.*  As illustrated in this case, sending a Rule 45(b)(1) "notice" of intent to issue a business record subpoena to a non-party simply creates confusion.  Although not entirely clear, there is some indication that the "notices" of intent to issue subpoenas may have been erroneously sent to the non-parties during a staffing transition in plaintiff counsel's office.

Defendants' brief correctly describes the proper and normal procedure for issuing "notice of intent" to the parties and plaintiff's counsel would be well served by reviewing the procedures.

objections after receiving notice of intent to issue subpoenas.[9]

Although defendants' motion is denied, defendants' belated objections and motion have interrupted the service of record subpoenas and related document production.[10] The parties shall confer concerning the remaining subpoenas and, if there are no further objections, the subpoenas shall be served and production shall proceed. If there are specific objections to the nature of the requested documents, the parties shall confer before defendants file a motion for a protective order.[11]

**IT IS THEREFORE ORDERED** that defendants' motion to quash and for a protective order **(Doc. 85)** is **DENIED.**

---

[9] The only argument raised by defendants in support of their motion for sanctions and a protective order is based on Rule 45(b)(1) notice provisions and the court's ruling is limited to that issue. No arguments are asserted concerning the nature of the requested documents and the court expresses no opinion concerning the relevance of the requested documents.

[10] On March 11, 2011, plaintiff sent letters to some of the non-parties advising them that objections had been filed and that the subpoenas had not actually been served.

[11] This ruling does not address any objection a non-party might have to producing documents. As noted above, Rule 45(c)(2) provides specific procedures for a non-party to object to production and the steps plaintiff must take to secure production.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 27th day of May, 2011.

                                                             S/ Karen M. Humphreys
                                                       _____
                                                       KAREN M. HUMPHREYS
                                                       United States Magistrate Judge